SEISMOGRAPH SERVICE (ENGLAND), LIMITED *v.* BOLT ASSOCIATES, INC.
(4495)

BORDEN, SPALLONE and BIELUCH, Js.

Argued May 6—decision released August 12, 1986

*Gordon R. Erickson,* with whom, on the brief, was *Stephen A. Wise,* for the appellant (named defendant-third party plaintiff).

*Michael A. Dowling,* for the appellee (third party defendant Gardner-Denver Company).

BIELUCH, J. This appeal arises out of a complex action involving a defective air compressor manufactured by the third party defendant, Gardner-Denver Company (Gardner-Denver), and sold by the defendant, Bolt Associates, Inc. (Bolt), to the plaintiff, Seismograph Service (England), Limited (Seismograph), as part of a much larger package of machinery. This appeal was filed by Bolt as a result of the trial court's ruling that Gardner-Denver was entitled to try its counterclaim against Bolt in a separate proceeding after two

prior trials had already determined the respective issues of liability and damages on the other claims between the three parties. We find error.

The facts are not in dispute. Seismograph is engaged in the business of marine geographical surveying. In connection with its business, Seismograph purchased from Bolt for $199,885 components of machinery which were installed aboard a ship for the purpose of surveying the bottom of the North Sea off the coast of Norway in a search for oil deposits. The survey required that the machinery be continuously in operation for long periods of time. One of the main components of the package was an air compressor which had been purchased by Bolt from Gardner-Denver for $19,000. After 155 hours of use in connection with the survey of the North Sea, the compressor failed, making all components of the survey machinery inoperable. As a result, Seismograph's ship was forced to return to Norway, where it was laid up for approximately fifty-four days while repairs and modifications were made to the air compressor.

Seismograph commenced the present action against Bolt, claiming that Bolt had breached both express and implied warranties that the machinery would be fit for Seismograph's purposes. Bolt, in turn, impleaded Gardner-Denver, alleging that Bolt had relied upon Gardner-Denver's warranties to it in using the air compressor as part of the package which it sold to Seismograph and that those warranties had been breached by Gardner-Denver. Gardner-Denver counterclaimed against Bolt for goods and services rendered to, but not paid for by Bolt.

The parties agreed to bifurcate the trial on the issues of breach of warranty and damages, respectively. As a result of the first trial, jury verdicts were rendered against Bolt in favor of Seismograph, and against

Gardner-Denver in favor of Bolt. After the second trial, the jury awarded damages of $194,177 to Seismograph, and damages of the same amount to Bolt. The trial court subsequently denied Bolt's motion for attorney's fees, concluding that Bolt's recovery against Gardner-Denver "was not a pure indemnity situation." Thereafter, Bolt moved for a judgment dismissing Gardner-Denver's counterclaim against it, and for a final judgment on the court's prior order denying its demand for attorney's fees. Gardner-Denver objected to the motion relative to its counterclaim, arguing that it had never withdrawn its counterclaim and that it had expected the trial of that counterclaim to go forward after the first two trials were completed. The court denied Bolt's motions for dismissal and final judgment. Bolt's subsequent motion to amend its reply to Gardner-Denver's counterclaim by adding a special defense of res judicata and collateral estoppel was also denied. Bolt and Gardner-Denver then stipulated to a judgment in favor of Gardner-Denver on its counterclaim in the amount of $7547.72, subject to Bolt's right to appeal from this judgment and from all other issues as to which it had given proper notice of appeal.

Bolt claims that the trial court erred (1) in denying its motion for a final judgment on Gardner-Denver's counterclaim, and thus permitting Gardner-Denver to obtain a third and separate trial on its counterclaim, (2) in denying its motion to amend its reply to Gardner-Denver's counterclaim, and (3) in denying its demand for an award from Gardner-Denver of attorney's fees incurred in defending Seismograph's action against it for damages ultimately recovered on its third party complaint against Gardner-Denver.

Bolt's first claim is that the court erred in permitting Gardner-Denver to obtain a third and separate trial on its counterclaim after two prior trials had already been litigated. We agree.

On October 6, 1981, at the outset of the bifurcated trial held in this matter, the court stated that "evidence will be applicable, except where otherwise indicated, to the Complaint of the Plaintiff, The Defendant Bolt, both on their defense and their [third party complaint] against Gardner-Denver." At that time, counsel for Gardner-Denver stated: "Of course, this doesn't come up until we get to the damages, if we ever get there, our Counter Claim against Bolt." Indeed, in their respective briefs, both parties agree that Gardner-Denver's counterclaim was not to be involved in the first trial limited to the question of liability. The parties disagree, however, upon whether or not the counterclaim was to be a part of the second trial limited to the award of damages, if any, dependent upon the verdict as to liability in the first trial.

Bolt points to the aforementioned understanding of Gardner-Denver's counsel at the outset of the litigation as evidence of his client's own intent to raise the counterclaim during the second trial on the issue of damages. In addition, Bolt further relies upon the fact that counsel for Bolt and Gardner-Denver both read their pleadings to the jury at the outset of the second trial, including the counterclaim in its entirety and Bolt's answer to it.

In response to this argument, Gardner-Denver asserts that the court expressly precluded it from trying its counterclaim in the second trial. A review of the transcript, however, clearly demonstrates that this is not the case.

The ruling of the court at the beginning of the second trial to which Gardner-Denver refers relates solely to the issue of apportionment of the plaintiff's damages between Bolt and Gardner-Denver. That issue had been raised in the second trial as to liability, and the court correctly refused to retry it. The ruling did not

extend, however, to Gardner-Denver's counterclaim, which had never been tried. The counterclaim did not involve the issue of apportionment of the plaintiff's damages in any way. It related to items and services furnished to Bolt by Gardner-Denver which allegedly were never paid for.

The trial court, in denying Bolt's motion for a final judgment, found that "[t]here is nothing in the court's file or the transcript to indicate as proof that Gardner-Denver withdrew or abandoned its counterclaim." We conclude that the contrary is the case. The damages trial was, by the uncontroverted evidence, the forum in which Gardner-Denver's counterclaim was to be tried. At the outset of that trial, the counterclaim was read to the jury. Gardner-Denver has failed to point us to any evidence thereafter which it sought to present on its counterclaim, nor has it shown that the court precluded it from so doing.

The doctrine of res judicata applies " 'to any claims relating to the cause of action which were actually made or might have been made.' " *Gagne* v. *Norton,* 189 Conn. 29, 32, 453 A.2d 1162 (1983), quoting *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). In the present case, by the reading of the counterclaim at the outset of the second trial, the claims alleged in that pleading were made a part of the trial. The record indicates that no evidence was presented thereafter by Gardner-Denver to support the counterclaim despite its having had ample opportunity to do so. This case provides a paradigm of one of the policies underlying the doctrine of res judicata: "[O]rdinarily a plaintiff cannot split his cause of action. He cannot sue for part of his claim in one action and then sue for the balance in another action." *Gagne* v. *Norton,* supra, 32. Indeed, in this case, Gardner-Denver having failed to present any evidence

on its counterclaim, or good reason for that failure at the second trial, its claim against Bolt evaporated. By permitting it to be resurrected in a third trial, this "litigation would be prolonged beyond the requirements of a sound public policy." *Damico* v. *Dalton,* 1 Conn. App. 186, 188, 469 A.2d 795 (1984). Thus, the court erred in denying Bolt's motion for a final judgment on Gardner-Denver's counterclaim and in permitting a third and separate trial on the counterclaim against Bolt.[1]

The sole remaining claim of error relates to the court's denial, after the second trial, of Bolt's application for an award from Gardner-Denver of attorney's fees incurred in defending against Seismograph's complaint. The court denied such an award on the ground that "[t]his then was not a pure indemnity situation and the claim for attorney fees must fail." We disagree with the court's ruling.

The rationale behind the trial court's denial of an award of attorney's fees to Bolt was explained in its memorandum of decision as follows: "Faced with the earlier general verdict as an accomplished fact this court instructed the present jury that it must pass on damages found against Bolt on to Gardner-Denver. This jury returned a verdict for $194,177.00 against Bolt and pursuant to the instruction found a similar amount for Bolt against Gardner-Denver. The amount of the verdict was small when compared to the well substantiated damages claimed by the plaintiff. One must conclude that this jury apportioned the damages and returned a verdict for that portion which it thought properly assessable against Gardner-Denver only since it was bound to act within the above mentioned instruc-

---

[1] Because of our conclusion regarding this first claim, we find it unnecessary to address the second issue, namely, whether the court erred in denying Bolt's motion to amend its reply to Gardner-Denver's counterclaim so as to plead res judicata and collateral estoppel in any new third trial.

tion. The jury's verdict said in effect that Gardner-Denver was not responsible for all of the damages sustained and this was always the position of Gardner-Denver." That conclusion by the court was unwarranted.

The jury in the first trial was expressly instructed not to apportion liability between Bolt and Gardner-Denver. Similarly, the court refused to try the issue of apportionment of liability at the commencement of the second trial. Under these circumstances, the jury was not asked to apportion damages.

The third party complaint filed by Bolt impleading Gardner-Denver expressly demanded as relief "judgment against Gardner-Denver for all sums that may be adjudged against Bolt Associates in favor of the plaintiff [Seismograph], together with all costs of defense." That complaint against Gardner-Denver alleged that Bolt's warranties to Seismograph were made "solely in reliance upon warranties and representations made by Gardner-Denver." "Since the [third party plaintiff] seek[s], not contribution or partial payment, but complete reimbursement for all loss and expenses arising from the litigation instituted against [it] in the [Seismograph] case, this is an action for indemnity rather than for contribution . . . ." *Kaplan v. Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965). "The implied contract of indemnity which arises in favor of a person who is exposed to liability on account of the tortious act of another imposes an obligation upon the active wrongdoer to reimburse the indemnitee not only for any damages which he has been obliged to pay but also for reasonable attorney's fees, at least where he has notice of the suit against the indemnitee and an opportunity to defend. 42 C.J.S., Indemnity, § 24." *Sendroff v. Food Mart of Connecticut, Inc.,* 34 Conn. Sup. 624, 626, 381 A.2d 565 (1977).

The trial court was in error in relying upon its post-verdict analysis and assumption of how the jury had ruled in deciding not to award reasonable attorney's fees to Bolt. It was the substance of the allegations and prayer for relief contained in Bolt's third party complaint against Gardner-Denver which controlled the scope of Bolt's claim against the third party defendant. Those allegations and prayer for relief clearly constituted a claim for indemnification of payment to Seismograph, together with an award of reasonable attorney's fees.

There is error, the judgment on the counterclaim of the third party defendant, Gardner-Denver Company, is set aside and the case is remanded with direction to render judgment for the third party plaintiff, Bolt Associates, Inc., on that counterclaim and for further proceedings limited to the claim of the third party plaintiff for reasonable attorney's fees from the third party defendant.

In this opinion the other judges concurred.