MARY MERRITT *v.* TIMOTHY FAGAN
(AC 23142)

Foti, Pellegrino and Dranginis, Js.

Argued April 29—officially released August 12, 2003

authority to render. See, e.g., *In re Brianna F.*, 50 Conn. App. 805, 811, 719 A.2d 478 (1998).

*Donald A. Mitchell,* for the appellant (defendant).

*Elisabeth S. Maurer,* for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendant, Timothy Fagan, appeals from the judgment of the trial court, rendered in favor of the plaintiff, Mary Merritt, after he was defaulted for failure to plead, which was followed by a hearing in damages. On appeal, the defendant claims that the court improperly (1) denied his motion to set aside the default, (2) found that the plaintiff held a fee interest in the property at issue, (3) failed to consider his claim of avoidable consequences, and (4) awarded punitive damages and attorney's fees. We affirm the judgment of the trial court.

The court found the following facts. The defendant owned and operated a business that purchased and sold antiques, works of arts, collectibles and other items. The parties' relationship was a casual one, formed as a result of the location of the defendant's business near the business of the plaintiff's niece.

On or about February 16, 1998, the plaintiff invited the defendant to her home to obtain his opinion on the value of several items. After looking through the plaintiff's attic, the defendant found a painting of the

Grand Canyon by Arthur Wesley Dow (painting) and asked if he could purchase it from her. The plaintiff declined the offer. The defendant then offered to take the painting and have it appraised. The plaintiff accepted that offer, and they both agreed that as soon as the defendant received the appraisal, he would return the painting to her with a copy of the appraisal.

Despite the plaintiff's numerous inquiries into the painting's location, the defendant did not tell the plaintiff its whereabouts, nor did he provide her with a copy of the appraisal report. Ultimately, the plaintiff learned that the defendant had taken the painting to an auction facility where it had been auctioned for $165,000. The defendant retained the net proceeds from the sale at auction, which amounted to $150,000.

The plaintiff brought an action against the defendant claiming (1) conversion of the painting, (2) breach of contract, (3) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (4) negligent infliction of emotional distress. The plaintiff's complaint, filed on November 30, 1999, recited a return date of December 14, 1999. The defendant appeared through counsel, but failed to file an answer within the time prescribed by the rules of practice. Consequently, pursuant to Practice Book § 17-32, the plaintiff filed a motion for default for failure to plead on October 22, 2001, which the court clerk granted that same day. The plaintiff then claimed the matter for a hearing in damages on November 7, 2001.

The defendant waited until February 26, 2002, the day of the scheduled hearing in damages, to file his answer and to file a motion to set aside the default. The court denied that motion, and the hearing in damages proceeded on March 5, 2002. After the hearing in damages, the court issued a memorandum of decision in which it found that the plaintiff was entitled to (1)

$150,000 for the conversion of her property, (2) $150,000 for the CUTPA violation as punitive damages, (3) interest of $58,000 and (4) attorney's fees of $37,030. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to set aside the default entered against him on October 22, 2001. Specifically, the defendant argues that the court improperly denied the motion because he had filed his answer timely pursuant to General Statutes § 52-121 (a) and Practice Book § 17-32 (b).

We begin by setting forth the standard of review that will govern our analysis. We review a court's ruling on a motion to set aside a default under the abuse of discretion standard. *Richards* v. *Trudeau*, 54 Conn. App. 859, 863, 738 A.2d 215 (1999). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Terracino* v. *Fairway Asset Management, Inc.*, 75 Conn. App. 63, 73, 815 A.2d 157, cert. denied, 263 Conn. 920, 822 A.2d 245 (2003).

A

The defendant first argues that the court improperly denied his motion to set aside the default because he filed his answer timely in accordance with General Statutes § 52-121 (a). We do not agree.

The defendant argues that there was no legal basis for the court's denial of his motion to set aside the default. In support of his argument, the defendant cites General Statutes § 52-121 (a), which provides that

"[a]ny pleading in any civil action may be filed after the expiration of the time fixed by statute or by any rule of court until the court has heard any motion for judgment by default or nonsuit for failure to plead which has been filed in writing with the clerk of the court in which the action is pending." The defendant argues that even though he filed his answer beyond the time period fixed by Practice Book § 10-8, it was timely filed pursuant to General Statutes § 52-121 (a) and, as a result, the court should have granted his motion to set aside the default judgment.

Under the circumstances, the court did not improperly deny the defendant's motion to set aside the default. Although the defendant claims that General Statutes § 52-121 (a) afforded him an opportunity to file his answer, "we cannot say that the trial court was deprived of its inherent authority to control the proceedings before it to ensure that there was no prejudice or inordinate delay." *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 76, 728 A.2d 1133 (1999). In *Gianquitti*, the defendant claimed that the trial court improperly had precluded it from filing its special defenses on the day trial commenced. Id. In support of its argument, the defendant cited General Statutes § 52-121 (a) to support the proposition that it "was entitled as of right to file its pleading . . . ." (Internal quotation marks omitted.) Id. Despite the fact that a motion for default was never filed, the trial court in *Gianquitti* exercised its discretion and did not allow the filing of the special defenses. Id., 76–77.

Following the line of reasoning from *Gianquitti* with respect to General Statutes § 52-121 (a), we conclude that the court did not abuse its discretion in denying the defendant's motion to set aside the default. We specifically note that unlike the situation in *Gianquitti* in which a default motion was not filed, the plaintiff here did file a motion for default, which the clerk granted. We also note that it was more than two years from the

original return date that the defendant filed his answer and special defenses and that he did so on the day of the scheduled hearing in damages. Additionally, despite the defendant's being in default, the court gave him what it described as "a wide latitude with respect to his participation in the hearing [in damages] and in such defenses as he believed existed to the litigation as a matter of courtesy and certainly not as a matter of right." As such, an injustice has not been done. The court was well within its discretion to handle the situation as it did. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion to set aside the default.

B

The defendant next argues that the court improperly denied his motion to set aside the default pursuant to Practice Book § 17-32 (b). We do not agree.

Section 17-32 (b) provides in relevant part that "[i]f a party who has been defaulted under this section files an answer before a judgment after default has been rendered by the judicial authority, the clerk shall set aside the default. If a claim for a hearing in damages or a motion for judgment has been filed the default may be set aside only by the judicial authority. . . ." Accordingly, a defendant seeking to file an answer after the plaintiff has filed a claim for a hearing in damages will succeed only by first filing a motion with the judicial authority to open the default. *Richards* v. *Trudeau*, supra, 54 Conn. App. 862–63. We review a court's refusal to open the default under the abuse of discretion standard. Id., 863.

The plaintiff filed a certificate of closed pleadings and claimed the matter to the trial list on June 29, 2001. Subsequently, the plaintiff filed a motion for default for failure to plead, which the court granted on October 22, 2001. Then, on November 7, 2001, the plaintiff

claimed the matter to the hearing in damages list. It was not until February 26, 2002, the day of the scheduled hearing in damages, that the defendant filed an answer and a motion to set aside the default. Because the plaintiff had claimed the matter to the hearing in damages list before the defendant filed his answer, the power to open the default was within the discretion of the court. See Practice Book § 17-32 (b); *Richards* v. *Trudeau*, supra, 54 Conn. App. 862–63.

Our review of the record reveals adequate support for the court's decision not to set aside the default. The defendant waited until the day of the scheduled hearing in damages, nearly two years from the original return date, to file his answer and a motion to set aside the default. Additionally, despite going forward with the hearing in damages, the court still afforded the defendant wide latitude with respect to his participation in the hearing. As such, we conclude that the court did not abuse its discretion in denying the defendant's motion to set aside the default.

## II

The defendant next claims that the court improperly found that the plaintiff held a fee interest in the painting. Specifically, the defendant argues that the court (1) did not have a sufficient evidentiary basis to conclude that the plaintiff held a fee interest in the painting and (2) improperly admitted the plaintiff's testimony on the issue of her ownership of the painting. We do not agree and will address each aspect of the defendant's claim in turn.

The following additional facts underlie the defendant's claim. On November 28, 1967, the plaintiff's husband, Walter Gordon Merritt, executed his will. In one provision, Walter Merritt devised certain property to the plaintiff in the following language: "If [the plaintiff] survives me, I give and devise to her TO HAVE AND

TO HOLD during her life . . . all tangible personal property of every description customarily used in connection therewith, including household furnishings but excepting the items specifically bequeathed by me to others in Article SEVENTH . . . ." The defendant contends that the language of Walter Merritt's will, among other evidence, supports a conclusion that the plaintiff did not possess a full fee interest in the painting. As a result, the defendant argues that the court could not award to the plaintiff the full amount of the painting as damages.

On that issue, the court heard testimony from the plaintiff that she had seen the estate's inventory list and that the painting was not mentioned or contained therein. Consequently, the court found that the evidence supported a conclusion that the plaintiff possessed a fee interest in the painting, that it was not an asset of the estate and therefore was free of any life estate limitation contained in Walter Merritt's will.

## A

The defendant claims that the court's finding that the plaintiff held a fee interest in the painting did not have a proper evidentiary basis.

Our standard of review of such claims is well established. "When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 353–54, 794 A.2d 1043 (2002).

In its memorandum of decision, the court clearly set forth the basis of its findings. Specifically, the court noted its consideration of the language of Walter Merritt's will and of the plaintiff's testimony that the painting was not on the estate's inventory list in making the implicit factual finding that the plaintiff held a fee interest in the painting.[1] After considering the evidence before it, the court stated that "this particular item of personal property passed directly to the plaintiff free from the burden of the life estate limitation."

Essentially, the defendant now asks this court to review the evidence on which the trial court made its factual findings and to conclude otherwise. We decline to do so. After a careful review of the entire record, we conclude that the court's finding that the plaintiff held a fee interest in the painting does not leave us with a "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 354. As such, the court's finding in that regard was not clearly erroneous.

B

The defendant next claims that the court improperly admitted the plaintiff's testimony regarding the painting's absence from the estate's inventory list. The defendant, however, concedes that he did not preserve his claim, but now argues that the court's conduct constituted plain error. See Practice Book § 60-5; *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 765–66, 717 A.2d 150 (1998).

---

[1] The court stated in its memorandum of decision: "[T]he court has found the testimony of the plaintiff to be quite credible on the question of her absolute ownership of the painting . . . ."

"To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Kennison*, 62 Conn. App. 256, 259–60, 774 A.2d 987, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).

We will not undertake a plain error review of that claim because it is not one that, by implication, would affect the "fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Macy* v. *Lucas*, 72 Conn. App. 142, 157, 804 A.2d 971, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002). Plain error review is not warranted.

### III

The defendant next claims that the court improperly failed to consider his claim of avoidable consequences. Specifically, he claims that the court improperly failed to consider whether the plaintiff had a duty to mitigate her damages by taking reasonable efforts to recover possession of the painting. We decline to review that claim because the defendant has failed to provide an adequate record for review.

"It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999).

The court's memorandum of decision does not specifically address the defendant's defense of avoidable consequences. If the defendant believed that the court did not address his asserted defense, he could have filed a motion for articulation; see Practice Book § 66-5; but he failed to do so. The defendant bears the burden of furnishing this court with an adequate record to review his claim. See Practice Book § 61-10. Accordingly, because the defendant failed to make such a motion, we must take the court's decision as properly defining the scope of the defendant's defenses and arguments that were presented. "Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Collic*, supra, 55 Conn. App. 209. We therefore decline to review the defendant's claim.

## IV

Finally, the defendant claims that the court improperly awarded punitive damages and attorney's fees.[2] We decline to review this claim.

"It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial

[2] The defendant also claims that the court improperly awarded equitable relief as to the plaintiff's CUTPA claim. That claim, as with the defendant's other challenges to the court's award of damages, is not preserved. Nevertheless, we observe that in her complaint, the plaintiff did not ask the court for equitable relief pursuant to her CUTPA claim. The plaintiff sought only punitive damages and attorney's fees, which is exactly what the court awarded. Although authorized to do so under the statute, the court awarded no equitable relief to the plaintiff. To the extent that the defendant relies on *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 645 A.2d 505 (1994), for the proposition that because CUTPA creates an "essentially equitable cause of action"; id., 155; all relief awarded pursuant to that statute is, therefore, equitable in nature, that reliance is misguided.

court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *William C.*, 71 Conn. App. 47, 67, 801 A.2d 823, cert. granted on other grounds, 262 Conn. 907, 810 A.2d 277 (2002); see *Narcisco* v. *Brown*, 63 Conn. App. 578, 582, 777 A.2d 728 (2001); *Baker* v. *Cordisco*, 37 Conn. App. 515, 522, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995).

The defendant did not object to the court's award or otherwise seek an articulation of the court's reasoning after it made its award. We therefore refuse to consider the defendant's claims regarding punitive damages and attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.